# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOE R., III,[1]                          )
                                         )
                    Plaintiff,           )
                                         )        **CIVIL ACTION**
v.                                       )
                                         )        **No. 20-1189-JWL**
ANDREW M. SAUL,                          )
**Commissioner of Social Security,**     )
                                         )
                    Defendant.           )
_____  )


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of Ms. Perkins's medical opinion, or in his consideration of Plaintiff's allegations of symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on October 6, 2017.  (R. 15).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in considering the medical opinion of the Advanced Practice Registered Nurse (APRN) who treated him, Ms. Perkins, and did not address Plaintiff's specific allegations regarding a need to lie down during the day, as required by Social Security Ruling (SSR) 16-3p.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

3

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  Because the ALJ's evaluation of Plaintiff's allegations of symptoms impacted his consideration of the medical opinions, the court addresses that issue first.

## II.     Consideration of Plaintiff's Alleged Need to Lie Down During the Workday

Plaintiff alleged he needs to lie down four to six hours each day due to pain in his legs, and that although the ALJ found that Plaintiff's allegations were "not entirely consistent" with the evidence, he did not specifically address why the alleged need to lie down was inconsistent with the record evidence.  (Pl. Br. 18) (quoting R. 21).  Plaintiff argues, "To the extent the ALJ relied on the objective imaging to discount [Plaintiff]'s reported limitations, the evidence does not support the ALJ's decision" because the

Commissioner may not "rely solely on the lack of medical evidence to discount a claimant's reported limitations," and because the imaging at issue revealed severe polyneuropathy and the ALJ did not explain why these severe abnormalities do not support the alleged need to lie down. (Pl. Br. 19). He argues the ALJ's reliance on a history of medication non-compliance predates the alleged onset date and is inappropriate because there is no evidence of non-compliance after the alleged onset date. Id. at 19-20 (citing Wells v. Colvin, 727 F.3d 1061, 1069-70 (10th Cir. 2013); and Racette v. Berryhill, 734 Fed. App'x. 592, 598 (10th Cir. 2018). Plaintiff argues the record evidence of "ongoing and escalating treatment supports [his] testimony concerning his need to lie down due to the pain he suffered." Id. at 21.

The Commissioner argues, "The ALJ's assessment was extensive, reasonable, and well-supported by the evidence," and specifically addressed "Plaintiff's claimed need to nap daily." (Comm'r Br. 11). He argues the medical evidence does not contain observations of Plaintiff being overly fatigued, and no medical source, including Ms. Perkins, opined that Plaintiff needed to lie down during the workday. Id. at 12. He argues Plaintiff's "activities do not suggest that Plaintiff's fatigue was so extreme as to require him to sleep four to six hours per day." Id. at 13.

In reply, Plaintiff points out that the Commissioner argues about other impairments but does not address Plaintiff's alleged need to lie down because of burning pain in his feet. (Reply 4). He acknowledges the ALJ discussed Plaintiff's diabetes and resulting neuropathy, but argues that discussion is insufficient because the ALJ relied on non-compliance with medication, and even after Plaintiff began complying with

medication he continued to report the symptoms of neuropathy despite also reporting

improvement with Tribesa, and that Lyrica worked better than gabapentin.  (Reply 4-5).

### A.    Standard for Evaluating Plaintiff's Allegation of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact
> disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a

non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see

also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B. The ALJ's Findings

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. 21).

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from his impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529, 416.929).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. §§ 404.1529, 416.929 (2017), is still the proper standard to be used as explained in the regulations in effect on June 29, 2019, when this case was decided.  Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

Among other things, the ALJ noted Plaintiff alleged: his "neuropathy [is] exacerbated by lying down to sleep," id. (citing R. 252); "the neuropathy symptoms are worse with lying down, and limit his ability to sleep," id. at 22 (citing R. 393, 410); "he has symptoms of fatigue and weakness, due to exhaustion."  Id. (citing R. 299, 410, 414).  The ALJ also provided an extensive discussion of Plaintiff's diabetes, his non-compliance with medication, and non-compliance with his diabetic routine:

> The claimant has a history of medication noncompliance and diabetic routine noncompliance, which has led to exacerbations of his diabetic symptoms (Exhibits 1F/16; 5F/13).  He continues to have candy one to two times per week (Exhibit 8F/8).  His symptoms have been better controlled with use of Triseba, and the Lyrica is working well for the neuropathy (Exhibits 5F/38; 6F/13).  The claimant has no recent hypoglycemic events, and he denies having hypoglycemic loss of awareness (Exhibits 5F/29; 6F/13).  The claimant's A1C is down to 8% (Exhibit 8F/21).  Despite the allegations of disruptions from neuropathy, on examination, his skin and nails are normal, he has no breakdowns or lesions (Exhibits 2F/20; 5F/33; 8F/12).  While he has demonstrated diminished sensation on monofilament testing, at other times, his sensation has been intact on this test (Exhibits 2F/20; 5F/33; 6F/17; 8F/12, 28).  His vibratory sense is intact (Exhibit 6F/17).  He reports during treatment that the neuropathic pain is tolerable (Exhibit 8F/25).  He has normal gait, and he continues to drive, despite any neuropathy of the lower extremities (Exhibit 8F/28).  Though he complains of difficulty with using his hands due to neuropathy, the claimant's grip strength is intact on examination (Exhibit 3F/4; 8F/2).  He has reported the ability to play video games, smoke, use a weed eater, drive, prepare small meals, clean, take out trash, do laundry, and shop despite his symptoms (Exhibits 4E/6; 5E/7; 8E/2-3; 4F/2; 5F/32; 8F/8).  The claimant's endocrinologist has advised to him to participate in moderate intensity exercise (Exhibit 8F/14).

(R. 24).  The ALJ noted that although Plaintiff "alleged the need to nap daily, due to fatigue and weakness, he has not been noted to be overly fatigued on examination" (R. 25), and "Despite alleged insomnia, he reported no problem sleeping during the physical consultative examination."  Id. 25-26.

The ALJ found Plaintiff's allegations of symptoms partially consistent with the evidence, noting severe polyneuropathy and diminished monofilament testing, and explained:

> Based on these findings, the residual functional capacity assessment above was reduced to the light level of exertion, with accommodations for performance of postural positions, operation of foot controls, gross and fine manipulative functions, exposure to hazards, exposure to temperature extremes and vibration, access to a restroom, and use of a motor vehicle.

(R. 23).

## C.   Analysis

Plaintiff's arguments lack merit.  As the discussion above reveals, the ALJ did specifically address Plaintiff's alleged need to lie down four to six hours during the workday.  Although Plaintiff asserts neither the ALJ nor the Commissioner's Brief addressed neuropathy pain, the reason he alleged a need to lie down for extended periods each day, that is not an entirely accurate representation of the case record.  First, as the ALJ pointed out in his decision Plaintiff claimed fatigue and weakness in his "Exertional Daily Activities Questionnaire," and in his history given at both the physical and the psychological consultative examinations.  (R. 22) (citing R. 299, 410, 414).  Thus, it was appropriate for both the ALJ and the Commissioner to address these allegations. Moreover, as noted above, the ALJ discussed Plaintiff's allegations of neuropathic pain. He noted the nerve conduction study that revealed severe polyneuropathy and discussed the symptoms allegedly resulting from the polyneuropathy.  (R. 23).  He noted Plaintiff's statement in his disability report that neuropathy was exacerbated by lying down.  (R. 21) (citing R. 252 "Neuropathy is worse when laying [sic] down to sleep").  He noted

Plaintiff's report to Dr. Penn that peripheral neuropathy is <u>keeping him from sleeping</u> and his complaint to Dr. Dominick that "neuropathy is worse when laying [sic] down to sleep." (R. 22) (citing R. 393, 410) (quote is from R. 410). He noted Plaintiff reported during treatment that the neuropathic pain is tolerable. (R. 24) (citing R. 521("Feels the pain is manageable")). While the ALJ did not specifically state "Plaintiff's asserted need to lie down four to six hours a day due to neuropathy pain is inconsistent with his assertion that lying down makes his neuropathy pain worse and he feels the pain is manageable," the record makes it clear the ALJ was relying on these inconsistencies.

Plaintiff's argument that it was error for the ALJ to rely on non-compliance fails for two reasons. First, the record indicates that such non-compliance was not just before the alleged onset date, but continued at least until February 5, 2019 wherein, as the ALJ noted in his decision (R. 24), Ms. Perkins stated Plaintiff, "Does indulge in candy 1-2X/week." (R. 504). Moreover, the cases Plaintiff cites in support of the proposition that evidence before the alleged onset date of disability should not be relied upon thereafter do not support such a broad reading of the proposition. In <u>Wells</u>, the evidence erroneously relied upon by the ALJ not only pre-dated the alleged onset of disability, it did "not appear to be part of the administrative record in th[e] case presented for judicial review." <u>Wells</u>, 727 F.3d at 1071. In <u>Racette</u>, although the court noted certain information relied upon by the ALJ pre-dated the plaintiff's alleged disability onset date, the court found error because the rationale the ALJ relied upon were "inadequate because they are either conclusory or based on misstatements and incomplete accounts of the

record." <u>Racette</u>, 734 Fed. App'x at 597.  The court finds no error in the ALJ's

evaluation of Plaintiff's allegation of symptoms resulting from his polyneuropathy

## III.    Evaluation of the Medical Source Opinions

Plaintiff claims the ALJ erred in finding Ms. Perkins's opinion is not supported by

or consistent with the record.  (Pl. Br. 10).  Plaintiff acknowledges the regulations in

effect when his case was filed required the ALJ to consider five factors (of which the

most important are supportability and consistency) when considering medical opinions

and prior administrative medical findings, to articulate how persuasive he finds the

opinions (collectively) of each source, and to explain how he considered the factors of

supportability and consistency.  (Pl. Br. 11) (citing 20 C.F.R. §§ 404.1520c, 416.920c).

Plaintiff acknowledges the ALJ properly applied the regulatory framework, but argues,

"substantial evidence does not support the ALJ's rationale."  <u>Id.</u> at 12.  This is so, in

Plaintiff's view, because "A reasonable mind would not accept the ALJ's rationale as

sufficient to support his ultimate conclusion."  <u>Id.</u>  He argues the record evidence does

not "amount to substantial evidence to support the ALJ's conclusion."  <u>Id.</u> at 13.  He

argues Plaintiff's activities are not "facially inconsistent with Ms. Perkins's opinion," and

that the record evidence, including objective testing and the other medical opinions,

supports Ms. Perkins's opinion.  <u>Id.</u> at 13-16.  He concludes, "A reasonable mind would

not look at 'the record' and [Plaintiff]'s activities and find that such evidence was

inconsistent with and did not support Ms. Perkins's opinion."  <u>Id.</u> at 16.

The Commissioner argues that the ALJ's finding regarding Ms. Perkins's opinions

is supported by the medical evidence and points out the ALJ "adopted nearly all" of Ms.

Perkins's opinion and generally found Plaintiff more functionally limited than did she. (Comm'r Br. 7).  He argues the ALJ's findings are supported by the record, arguing "Neither Plaintiff nor Nurse Perkins suggest any issues that would debilitate Plaintiff two days per month," and it is not the ALJ's responsibility to disprove opined limitations.  Id. at 8.  He argues requiring 2 days off each month has no support in the medical evidence and it is irrelevant that "reasonable minds can look to the same hundreds of pages of medical records and differ on what is persuasive," because Plaintiff must show the evidence compels a different conclusion than that reached by the ALJ.  Id. at 10 (citing Elias-Zacarias 502 U.S. at 481, n.1).

Plaintiff responds that the ALJ's stated rationale for finding Ms. Perkins's opinion unpersuasive, that it is "inconsistent with 'the record, including the testimony of the claimant,'" is insufficient to support the ALJ's conclusion except when he provides "further explanation as to the inconsistencies relied on."  (Reply 1) (citing Edgmon v. Berryhill, No. 6:16-CV-01334-JTM, 2017 WL 1332720, at *3 (D. Kan. April 11, 2017)). Plaintiff points to Ms. Perkins's findings of diabetes, demyelinating neuropathy, and reduced sensation, and argues they support her opinion and the ALJ did not explain how they are inconsistent with the opinion.  Id. at 2.  He argues the ALJ provided no explanation why Plaintiff's "activities could not have been performed on days when he was not suffering from a 'bad day' as opined to by Ms. Perkins."  Id. (citing Otte v. Berryhill, No. 18-2006-JWL, 2018 WL 5263515, at *4-5 (D. Kan. Oct. 23, 2018)).  He argues the other medical opinions relied upon by the Commissioner to support the ALJ's decision were outdated and stale and are not adequate to support the decision.  Id. at 3.

12

A.      **Standard for Evaluating Medical Opinions**

Effective March 27, 2017, the regulations changed the definition of "acceptable

medical source" to add licensed audiologists for certain impairments, and licensed

Advanced Practice Registered Nurses and licensed Physician Assistants within their

licensed scope of practice.  Compare 20 C.F.R. §§ 404.1502, 416.920 (2017), with 20

C.F.R. §§ 404.1502, 404.1513; 416.920, 416.913 (2016).  In the new regulations, the

Commissioner included a new section entitled "How we consider and articulate medical

opinions and prior administrative medical findings for claims filed on or after March 27,

2017."  20 C.F.R. §§ 404.1520c, 416.920c (2017).  The regulations provide that the

Commissioner "will not defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from your medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a)

(2017).  The regulations provide that the SSA will consider each medical source's

opinions using five factors, supportability, consistency, relationship of source to claimant,

specialization, and other factors tending to support or contradict a medical opinion or

prior administrative medical finding.  20 C.F.R. §§ 404.1520c(a)(c)(1-5),

416.920c(a)(c)(1-5) (2017).  They provide that the most important factors in evaluating

persuasiveness are supportability and consistency.  Id.

The regulations explain that the decision will articulate how persuasive the SSA

finds all medical opinions and prior administrative medical findings.  20 C.F.R.

§§ 404.1520c(b), 416.920c(b) (2017).  The articulation requirement applies for each

source, but not for each opinion of that source separately.  20 C.F.R. §§ 404.1520c(b)(1),

416.920c(b)(1) (2017).  It requires that the SSA "will explain how we considered the

supportability and consistency factors for a medical source's medical opinions or prior

administrative medical findings in your determination or decision.  We may, but are not

required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of

this section, as appropriate, when we articulate how we consider medical opinions and

prior administrative medical findings in your case record."  20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2) (2017).  The regulations explain that when the

decision-maker finds two or more medical opinions or prior administrative medical

findings are equal in supportability and consistency "but are not exactly the same," the

decision will articulate the other most persuasive factors from paragraphs (c)(3) through

(c)(5).  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017).  Finally, the regulations

explain that the SSA is not required to articulate how it considered evidence from non-

medical sources.  20 C.F.R. §§ 404.1520c(d), 416.920c(d) (2017).

## B.      The ALJ's Findings

The ALJ assessed Plaintiff with the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in
that he can lift and carry up to twenty pounds occasionally and lift or carry
up to ten pounds frequently; stand and/or walk for six hours out of an eight-
hour workday; and sit for six hours out of an eight-hour workday.  The
claimant should never climb ladders, ropes and scaffolds; can occasionally
climb ramps and stairs; and can frequently balance, stoop, kneel, crouch
and crawl.  The claimant can frequently handle, finger and feel bilaterally.
The claimant can occasionally use foot controls bilaterally.  The claimant
should never work at unprotected heights, with moving mechanical parts or
operate a motor vehicle; and can occasionally work in vibration, extreme
cold and extreme heat.  The claimant needs access to a bathroom and time
off task throughout the day for additional bathroom interruptions up to but
amounting to less than 10% of the time in an 8-hour workday.  The

> claimant is able to understand, remember, and carry out simple, routine and
> repetitive tasks in a work environment with no fast-paced production
> requirements involving only simple work-related decisions, and with only
> occasional judgment and work place changes.

(R. 20-21) (finding no. 5) (bold omitted).  In assessing this RFC, the ALJ evaluated

Plaintiff's allegations of disabling symptoms as discussed above, summarized the record

evidence including Plaintiff's testimony and other reports, the medical evidence, and the

medical opinions and prior administrative findings of fact.  Id. at 21-28.  Therein the ALJ

evaluated the consistency of Plaintiff's allegations of symptoms and the persuasiveness

of the medical opinions and prior administrative findings of fact.  He also included

explanations of the impact of the evidence on his findings:

> Based on these findings, the residual functional capacity assessment above
> was reduced to the light level of exertion, with accommodations for
> performance of postural positions, operation of foot controls, gross and fine
> manipulative functions, exposure to hazards, exposure to temperature
> extremes and vibration, access to a restroom, and use of a motor vehicle.

Id. at 23.  The ALJ found Plaintiff's mental impairments produce

> some difficulty completing tasks … [which] in combination with the
> claimant's pain, neuropathy, and need to use the restroom, the residual
> functional capacity assessment above was accommodated in the areas of
> complexity of tasks, pace of work, complexity of work decisions, judgment
> required at work, and changes to a workplace.

Id. at 25.

The ALJ evaluated the persuasiveness of the medical opinions and prior

administrative medical findings of eight medical sources, including Ms. Perkins.  (R. 26-

28).  The ALJ evaluated the October 2015 opinion of Dr. Mellvain who had treated

Plaintiff for seizures and found it persuasive.  Id. at 26.  He noted that although this

opinion was made years before the alleged onset date. seizure limitations were appropriate in the RFC assessed because of the risk of additional seizure activity.  Id.  He found the opinion of Dr. Dominick, formulated after a consultative examination in December 2017 not persuasive, and that the evidence supports greater limitations because of degenerative changes of the neck, weakness of the left upper extremity, polyneuropathy, fatigue, and excessive bowel movements.  Id.  Dr. Berg performed a psychiatric consultative examination and provided an opinion regarding Plaintiff's mental abilities and limitations based upon that examination in January 2018 which the ALJ found significantly persuasive.  (R. 26).  He found the opinion consistent with Dr. Berg's examination and supported by Plaintiff's ability to perform nearly a full range of activities of daily living, by Plaintiff's normal mood and affect, cooperation on examinations, normal memory and comprehension, and intact attention.  Id. at 26-27.

The ALJ found the prior administrative medical findings of Dr. Spence at the initial level are not persuasive because they are "not consistent with more recent records for the period since the amended alleged onset date."  Id. at 27.  He found the administrative medical finding of Dr. Wheeler at the reconsideration level

> partially persuasive, because it is partially consistent with the evidence. The limitations for performance of postural positions, use of the extremities, and exposure to environmental situations are supported by the claimant's history of neuropathy, back and neck pain, [and] history of seizure.  However, due to neck pain and neuropathic symptoms, the record supports a reduction to the light exertional level with never work in hazards and occasional vibration, as well as foot controls and frequent handling, fingering and feeling bilaterally.  In addition, due to his gastrointestinal symptoms the claimant would require time off task to use the restroom.

Id.  The ALJ noted that Dr. Markway and Dr. Rosenshield, the state agency

psychological consultants at both the initial and reconsideration level, both made an

administrative finding of no severe mental impairments.  Id.  He found this administrative

"finding is not persuasive, because it is not consistent with the evidence," and because

Plaintiff takes mental health medications and has some difficulty completing tasks.  Id.

The ALJ provided an extensive discussion of his consideration of Ms. Perkins's

opinion:

> On February 28, 2019, Anne Adaire Perkins, APRN opined that the
> claimant could lift or carry up to 20 pounds frequently and 50 pounds
> occasionally.  He could frequently reach, handle, finger frequently and he
> could occasionally feel.  The claimant could sit up to six hours and stand up
> to four hours in an eight-hour workday.  The claimant would be capable of
> moderate stress work; however, he would be off task up to 10% of the
> workday, he would rarely require unscheduled breaks for 10-15 minutes
> each, and he would miss work two days per month, due to the symptoms of
> his impairments (Exhibit 10F).  This opinion is partially persuasive.  The
> record regarding neuropathy and neck pain support the limitations for
> manipulation and reaching opined by Ms. Perkins.  Due to his history of
> gastrointestinal symptoms, the time off task is appropriate.  However, her
> opinion that the claimant can stand 4 hours in [sic] only partially relevant
> because she did not opine how long the claimant can also walk.  I also note
> that the opinion is internally inconsistent in that Ms. Perkins opined both to
> no limitations with reaching/handling/fingering, but also said the claimant
> was limited to frequent reaching/handling/fingering on page 4 (I note that
> frequent handling/fingering/feeling is supported by record and included in
> the claimant's residual functional capacity).  Lastly, Ms. Perkins opinions
> of the claimant having to switch positions, take unscheduled breaks, being
> off task 10%, and absent 2 days are not supported by or consistent with the
> record including the testimony of the claimant that he drives, goes to the
> store a couple times a week, reads magazines/short stories, and uses
> Internet for email/Facebook.

(R. 27-28).

At the end of his RFC assessment, the ALJ explained:

In sum, the above residual functional capacity assessment is supported by the medical evidence [of] record, statements of the claimant and the opinion evidence.  Accordingly, based upon the objective evidence, the claimant's course of treatment, their [sic] level of daily activity and their [sic] work history, I have determined that the claimant retains the residual functional capacity for work at a range of the light exertional level, with the limitations noted above, due to their [sic] degenerative disc disease of the cervical spine, seizures, insulin-dependent diabetes mellitus with polyneuropathy, irritable bowel syndrome with incontinence, and pancreatitis.  Additionally, the claimant's depression, anxiety, and methamphetamine abuse cause moderate difficulties with understanding, remembering, or applying information; concentration, persistence or maintain pace; and adapt and manage oneself that result in limitations, including able to understand, remember, and carry out simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple work-related decisions, and with only occasional judgment and work place changes.  Weighing all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.  There is evidence in the record that the claimant's impairments are not as severe as alleged and do not prevent them [sic] from performing basic work activities.  Therefore, I find that there is a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities.  The residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to their [sic] allegations of disability.

(R. 28).

### C.   Analysis

As Plaintiff acknowledges, the ALJ applied the correct legal standard in evaluating the legal opinions and prior administrative findings of fact.  His argument is, "A reasonable mind would not look at 'the record' and [Plaintiff]'s activities and find that such evidence was inconsistent with and did not support Ms. Perkins's opinion."  (Pl. Br. 16).  As the Commissioner's brief suggests, the ALJ assessed an RFC which is generally equivalent to or more restrictive than the limitations opined by Ms. Perkins.  Plaintiff's

real objection is to the ALJ's rejection of Ms. Perkins's opinions (that Plaintiff would be off task mentally up to 10% of the workday, would (rarely) require unscheduled breaks for 10-15 minutes each, and would miss work two days per month), and he argues that on the evidence in this record no reasonable mind would reject those opinions. The court disagrees.

As to the opinion Plaintiff would be off task 10% of the workday due to his mental impairments, no other medical source suggested such a limitation. Although the state agency psychological consultants opined Plaintiff's mental impairments were "not severe" within the meaning of the Act, the ALJ found this opinion unpersuasive because it was inconsistent with the record, Plaintiff requires mental health medications, and Plaintiff has some difficulty completing tasks due to anxiety and depression. (R. 27). The record evidence supports this finding. Moreover, Dr. Berg opined that Plaintiff is somewhat limited in his mental ability to persist but is able to persist up to his physical ability to persist, and the ALJ found this opinion significantly persuasive because it is consistent with and supported by Dr. Berg's examination, by Plaintiff's (mental) "ability to perform nearly a full range of daily activities," id. at 26, and is supported by examinations showing normal mood and affect, cooperation, normal memory and comprehension, and intact attention. Id. at 27. The ALJ noted that Plaintiff's persistence limitations combined with his pain, neuropathy, and need to use the restroom would result in time off task up to, but less than, 10% of a workday. Id. at 25. In this regard, the ALJ explained his rationale and it is supported by the record evidence. Plaintiff does not cite evidence, including Ms. Perkins's opinion, which compels a contrary conclusion.

19

Regarding the opinions that Plaintiff would rarely require unscheduled breaks and would miss work two days a month, no medical source other than Ms. Perkins opined regarding such needs, and Plaintiff points to no record evidence other than Ms. Perkins's opinion demonstrating such a need.  Again, that evidence does not <u>compel</u> a finding contrary to that of the ALJ.

Plaintiff points to record evidence which, in his view, supports Ms. Perkins's opinion, but that evidence does not compel the limitations Plaintiff alleges.  First, he argues the fluctuation in sensation caused by his neuropathy support that he has good days and bad days "and, in fact, supports that there would be days where his symptoms impacted him more severely which supports Ms. Perkins's opinion."  (Pl. Br. 14).  Plaintiff is correct that such fluctuation tends to provide a modicum of support for the opinion, but fluctuation in sensation (which was acknowledged by the ALJ) does not require finding a need for unscheduled breaks or missing work two days a month.

Next, Plaintiff argues that the other opinions or prior administrative findings pre-date other medical evidence, should be considered stale, and should not have been relied upon by the ALJ.  However, as Plaintiff notes is his Brief, "the ALJ himself found that these opinions were not consistent with the later submitted evidence showing higher levels of limitation."  <u>Id.</u>  Further, the ALJ found Plaintiff has greater limitations than did the other opinions cited by Plaintiff, and than several of the limitations opined by Ms. Perkins, and he explained the relative persuasiveness he found for each of the opinions.

Plaintiff argues that the objective testing showing severe chronic sensorimotor polyneuropathy, severe axonal and demyelinating neuropathy, reduced sharp/dull

discrimination, reduced vibratory sensation, reduced sensation to light touch and pin prick, and zero deep tendon reflexes is record evidence which supports Ms. Perkins's opinion and gives the lie to the ALJ's statement that the record does not support the opinion. (Pl. Br. 15). Again, this evidence tends to provide a modicum of support for the opinion, but it does not require finding a need for unscheduled breaks and two day off work each month.

Plaintiff argues that none of the activities specifically cited by the ALJ in discussing Ms. Perkins's opinion are "facially inconsistent" with her opinion, and record evidence does not preclude Plaintiff from doing those activities during the 28 days of the month when he is at work and during the 90% of the day in which he is not off-task. Id. at 13 (citing Otte v. Berryhill, No. 18-2006-JWL, 2018 WL 5263515, at *4-5 (D. Kan. Oct. 23, 2018) (finding remand necessary when the ALJ failed to explain specifically why he found the claimant's Ménière's disease attacks would not cause her to miss work one to two days a month on an ongoing basis)). This court's ruling in Otte does not require a different result in this case. In Otte, the issue was the frequency of the plaintiff's Ménière's disease attacks. The record supported that the plaintiff had been let go from work in 2014 because of ten attacks in six months, five of which had occurred in the last four weeks. Otte, 2018 WL 5263515, at *4. In 2015 the plaintiff reported attacks monthly or every other month, she reported a "guesstimate" of three attacks in the three months before the hearing, and that "she sometimes has three attacks a week, or three a day." Id. This court recognized that Ménière's disease attacks are variable and concluded:

> Therefore, "inconsistencies" in Plaintiff's reports of symptoms alone do not justify disregarding those reports.  The ALJ must explain specifically why he found that Plaintiff's Ménière's disease attacks will not cause her to miss work one to two days a month on an ongoing basis and are therefore not disabling.  He has not done so, and he may not simply disregard Plaintiff's allegations because there are other inconsistencies with the evidence.

Id. at *5.  Here, the issue is whether Plaintiff's neuropathy is so severe as to cause him to be off-task 10% or more of a workday on a consistent basis or so severe as to cause him to miss two days of work a month on a consistent basis.  As noted above, the ALJ found it is not so severe and the evidence supports that finding.  Notably, and perhaps most concisely, this is represented by the ALJ's recognition that Plaintiff reported during treatment that his neuropathic pain is tolerable.  (R. 24) (citing R. 521("Feels the pain is manageable")).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 14, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

22